[Civ. No. 4229. Third Appellate District.—February 17, 1931.]

WALTER A. SWEAT, Respondent, v. J. W. JAMESON et al., Defendants; J. W. JAMESON COMPANY (a Corporation), Appellant.

40

Glensor, Clewe, Van Dine & Turcotte for Appellant.

Hugh Gordon for Respondent.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—The plaintiff had judgment in this action

against the J. W. Jameson Corporation, from which judgment the corporation appeals.

The record shows that on January 14, 1924, the following instrument was executed by the Jameson Oil Company, and delivered to the plaintiff in this action, to wit:

"Freight Audit Contract.                    Bailey & Sweat,

"San Francisco. . . .

"The undersigned hereby agrees to permit, and Bailey & Sweat hereby agrees to make, an audit of the freight bills of the undersigned for any period agreeable to the undersigned (but not to exceed eight years) prior to this date.

"In full consideration of said service, both parties agree that collections from this audit are to be divided equally between the undersigned and Bailey & Sweat on a fifty (5) per cent basis.

"It is expressly understood and agreed that aforesaid collections are to be made payable to the undersigned but transmitted to the undersigned, through Bailey & Sweat.

"It is also understood that claims will be handled to conclusion by Bailey & Sweat and that their action will in no manner interfere with claims which the undersigned may file. After audit the aforesaid freight bills are to be returned to the undersigned.

"Subscriber JAMESON OIL CO.

"(Signed) L. F. ALKER,

"Address 2501 E 28th St.,

"Los Angeles, Calif."

At the conclusion of the trial the court made its findings, from which we summarize the following: That the plaintiff and A. L. Bailey were associated and engaged in business as traffic managers and rate experts; that the writing which we have set forth was duly executed and delivered to Bailey & Sweat; that Bailey & Sweat accepted the employment and proceeded to audit the various freight bills of the defendant for shipments made over the Atchison, Topeka & Santa Fe Railway, and that the audit disclosed overcharges in the sum of $5,006.38; that the firm of Bailey & Sweat, as partners, was dissolved on June 1, 1924; that on or about the date of the dissolution of said partnership, the plaintiff gave notice of such dissolution to the defendant, by causing a letter announcing such dissolution to be inclosed in a sealed envelope, with the postage prepaid

thereon, and directed to the defendant at its place of business; that after said dissolution, the business theretofore conducted by the copartnership of Bailey & Sweat was carried on by the plaintiff; that after the completion of the audit referred to herein, the plaintiff filed with the Railroad Commission of the state of California, on behalf of said defendant, a claim for the recovery of said excessive charges, and prosecuted the same to conclusion, and recovered judgment thereon in a proceeding before the Railroad Commission designated as "Case No. 2038"; that said claim was set forth in a formal complaint, prepared in the manner required by the Railroad Commission, which complaint was signed by the defendant on August 29, 1924; that same was filed with the Railroad Commission on September 6, 1924; that at the time said complaint was signed by the defendant, and at all times thereafter, said defendant had full knowledge of the contents thereof, and of the purpose for which the same was filed, and of the fact that said action was being prosecuted by the plaintiff as the successor in interest of the copartnership of Bailey & Sweat; that on or about March 5, 1925, the Railroad Commission filed its opinion and order in said cause No. 2038, directing the said Atchison, Topeka & Santa Fe Railway Company to refund and repay to the said J. W. Jameson Corporation, defendant herein, the excessive charges in the sum of $5,006.38, with interest thereon in the sum of $831.48, aggregating the total sum of $5,837.86; that thereafter, and on or about the eleventh day of March, 1925, the defendant filed with the said Railroad Commission a renunciation of its claim as set forth in case No. 2038, and requested the said Railroad Commission to enter a supplemental order, requiring that said Atchison, Topeka & Santa Fe Railway Company refund and repay the said excessive charges to the defendant herein, under the provisions of a complaint which had been filed with said Railroad Commission by the defendant on or about July 16, 1924, in a proceeding designated as "Case No. 2038"; that in pursuance of said renunciation and request, the Railroad Commission made and entered its supplemental order directing said excessive charges to be refunded to the defendant in the proceeding designated as "Case No. 2038." The court further found that the hearing in case No. 2023 was held on September

11, 1924, and judgment of the Railroad Commission rendered thereon on February 5, 1925; that the hearing before the Railroad Commission in case No. 2038 was had on December 17, 1924, and judgment rendered therein on March 5, 1925; that all the work of prosecuting the claim set forth in case No. 2038, and all of the work auditing said freight bills· and transportation records upon which said case was based, had been fully performed and completed by the said Bailey & Sweat, and the plaintiff herein, prior to the date on which judgment was rendered by said Railroad Commission in case No. 2023; that thereafter, and on June 27, 1925, the Atchison, Topeka & Santa Fe Railway Company paid the said defendants, in pursuance of said orders heretofore referred to, the sum of $8,374.32, and that said payment included the sum of $5,837.86, which constituted the excessive charges disclosed by the audit made by Bailey & Sweat, as set forth in the complaint filed in case No. 2038.

The findings further show the assignment by L. A. Bailey to the plaintiff herein of all of his interest in and to the contract, and the proceedings arising therefrom mentioned in this opinion. The court further found that the defendant was not prejudiced in any particular by reason of the dissolution of the partnership of Bailey & Sweat. Judgment accordingly went for the plaintiff with the compensation specified in the written contract of employment.

The record in this case shows that some time after the execution of the agreement made and delivered to Bailey & Sweat, on January 14, 1924, the defendant retained the Carmichael Traffic Corporation to institute proceedings before the Railroad Commission for the purpose of obtaining reparation and repayment of excessive rate charges made by the Atchison, Topeka & Santa Fe Railway Company, and that thereafter, and on July 6, 1924, the Carmichael Traffic Corporation filed, on behalf of the defendant, a claim against the Atchison, Topeka & Santa Fe Railway Company, in a case known as, and designated, "Case No. 2023." Thereafter, and on August 23, 1924, the defendant telegraphed to the plaintiff as follows:

"Gentlemen: This will acknowledge receipt of freight bills thàt you have audited for us. You did not return the freight bills covering shipments from Santa Fe Springs, moving prior to April 26, 1923, and since we have filed a

formal complaint with California Railroad Commissioners, involving rates from Santa Fe Springs to Los Angeles, during the period July 1, 1922, to April 26, 1923, it is imperative that we have all those freight bills, and will thank you to return them to us at once.

"Yours truly,

"(Signed) JAMESON OIL COMPANY."

The reply of this telegram was made by an attorney by the name of G. H. Baker, from which letter we take the following excerpts: "Bailey & Sweat have turned over to me for reply your telegram of the 23rd relative to the return of freight bills covering the period to April 26th." This letter further states that the defendant was advised by Mr. Sweat that the purpose of collecting the bills was to file a formal complaint for reparation, and that a complaint for that purpose was being prepared, further stating that the interest of the defendant would be looked after, etc. Following this, the defendant wrote the following letter:

'Los Angeles, August 28, 1924.

"Mr. Gwyn H. Baker, Attorney-at-Law,

"American Bank Bldg.,

"San Francisco, Calif.

"Dear Sir: Yours of the 23rd at hand. According to our understanding with Bailey & Sweat, the contract calls for an audit of our freight bills only; the right to file complaint we reserved ourselves, and have appointed Mr. Carmichael to handle such complaints for us. We would ask you to deliver our outstanding freight bills to Messrs. Glensor, Clewe and Van Dine, attorneys, located in the Mills Bldg., San Francisco, when they call for same. We believe this will clear the matter up, and remain,

"Very truly yours,

"JAMESON OIL CO.,

"M. P. SIMON,

"Manager."

A few days after the writing of this letter it appears that a complaint was prepared by G. H. Baker, at the request of the plaintiff, for and on behalf of the defendant, based upon the claims to which we have referred as having been audited by the plaintiff, and this complaint was signed by M. P. Simon as manager of the defendant. This complaint,

as we have stated, was filed with the Railroad Commission on September 8, 1924, and constituted the basis of case No. 2038, as hereinbefore stated.

The claim of the appellant is that the plaintiff is not entitled to recover upon the contract hereinbefore set forth, and that if any cause of action exists in favor of the plaintiff, as against the defendant, it is one for damages.

■ It is likewise claimed on the part of the appellant that the instrument of employment set forth herein was obtained by fraud and misrepresentation. We may here state that a careful study of the transcript fails to disclose any testimony upon which a finding to that effect could be based. The record shows that a man by the name of Hutchinson, who had been connected with traffic associations and engaged in business as the traffic manager and rate expert, took the complaint constituting the basis for action No. 2038, to Mr. Simon; that Mr. Simon read it; that at the very time that Hutchinson took the complaint to Mr. Simon for his signature, Mr. Carmichael of the Carmichael Traffic Corporation, was present; that some considerable conversation was had relative to the signing of the complaint, and in that conversation, Mr. Simon stated that Bailey & Sweat were the first to discover the overcharges, and were entitled to handle the claim. The record shows further testimony to the effect that Simon stated that it did not matter to him whether Bailey & Sweat or Sweat handled the matter. (This, in relation to the dissolution of the partnership of Bailey & Sweat.) The record also shows that Simon stated that his telegram relative to return of the freight bills might be disregarded.

■ Upon this appeal it is claimed that Simon had no right or authority to sign the complaint filed in action No. 2038, as manager of the defendant. A complete answer to this contention is found in the letter dated August 28, 1924, addressed to Gwyn H. Baker, and signed "Jameson Oil Co., M. P. Simon, Manager". This letter shows clearly that the testimony of Simon taken upon the trial of this action, as to his authority to sign the complaint as manager for the defendant, might very well be disregarded by the trial court.

■ We do not need to discuss any questions relating to the dissolution of the partnership of Bailey & Sweat, nor as

to the authority of Sweat to complete the business undertaken by the partnership, and to retain the services of G. H. Baker to prepare the complaint filed in action No. 2038, by reason of the fact that the signing of the complaint by the manager of the appellant, as we have just stated, constituted a ratification of everything that the plaintiff in this action had done. The record in this case furnishes sufficient testimony to this effect, if the trial court believed the testimony of the witness Hutchison. This testimony shows that the defendant did not desire to discontinue or dispense with the services of the plaintiff by reason of the dissolution of the partnership and in signing the complaint which had been prepared at the request of the plaintiff and filing with the Railroad Commission, only one conclusion can follow therefrom, and that is that the plaintiff was authorized to proceed.

Appellant likewise attacks several of the findings of the trial court, the first of which is directed against finding No. 4, which is to the effect that Bailey & Sweat accepted employment, audited the various freight bills, and that the audit disclosed that the Atchison, Topeka & Santa Fe Railway Company had exacted and collected from the defendant for shipments made by said defendant over its lines, excessive charges in the aggregate sum of $5,006.38. Technically, the contention of the appellant is true; as a matter of fact, it is untrue, because the exact amount of the excessive charges was undetermined until the Railroad Commission had filed its orders and judgments in the cases heretofore referred to. Likewise, finding No. 5 to the effect that the auditing of the freight bills had been concluded prior to June 1, 1924, is not strictly accurate, but the materiality of this finding is not apparent for the simple reason that after auditing, the defendant, by signing the complaint, authorized whatever further proceedings were necessary to prosecute the claims to judgment. Finding No. 6 to the effect that the plaintiff gave notice to the defendant of the dissolution of the partnership of Bailey & Sweat, does not appear to be supported by the testimony. This, again, is wholly immaterial by reason of what we have stated herein of the occurrences that took place at the time of the signing of the complaint by M. P. Simon as manager for the defendant in this action.

The record further shows, as we have stated, that judgment was entered in both cases; that the testimony used in the hearing had upon case No. 2023 was also used, by stipulation, at the hearing upon case No. 2038.

It is true that no money was collected under case No. 2038, but the mere fact that the defendant filed a renunciation of the award in that case, and elected to accept payment under the orders made in case No. 2023, cannot make any difference as to the right of the plaintiff to compensation, as provided for in the written agreement.

Nothing has been called to our attention which shows that the appellant did not understand fully just what it was doing when the written instrument, dated January 14, 1924, was executed and delivered to Bailey & Sweat. Nothing has been called to our attention showing that the appellant objected in any manner to the handling of claims against the Atchison, Topeka & Santa Fe Railway Company, until the Carmichael Traffic Corporation sought employment to prosecute actions based upon the same claims. Nor does the record in fact show any complaint made by the appellant as against anything done or not done by the plaintiff, save and except as to the return of the freight bills, and here again the record shows testimony to the effect that the manager stated the telegram in relation to the return of the freight bills might be disregarded.

The controversy in this action appears to have arisen by reason of the fact of there being two competing agencies for the business of prosecuting claims for the recovery of excessive rate charges, and that the appellant is in the position of having retained both agencies for the same work, or practically for the same work. While the original agreement does specify that the action of the plaintiff shall in no manner interfere with claims which the defendant might file, the reasonable interpretation of the agreement is that the defendant did not intend to withdraw from the plaintiff any of the business covered by the contract, and which, by the terms thereof, were placed within the custody of Bailey & Sweat to handle, until a final conclusion had been reached. However, the agreement provides for compensation at a certain rate upon collections being made, and that agreement holds, irrespective of the party making the collection, so far as it pertains to the claims en-

trusted to Bailey & Sweat. This portion of the agreement appears to be entirely overlooked by the appellant.

The appellant's .contention that no audit was ever made, and the citation of authorities as to what constitutes an audit, we think entirely immaterial, as the appellant, a party to the agreement, being in the transportation business, knew practically what work had to be performed, and technical definitions would neither add to nor take away from the meaning attached to the word "audit" by the parties to the instrument, upon which this action is based.

A number of other technical objections are urged by the appellant, which we have considered, but as they do not go to the merits of this cause, it would serve no useful purpose to set forth reasons why they do not affect the judgment which was rendered in this cause.

Being of the opinion that the material findings of the trial court, upon which the judgment in this action rests, are supported by the testimony, it follows that the judgment must be affirmed, and it is so ordered.